IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-221-D-BM

| | |
|---|---|
| AVERY MORROW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MARTIN O'MALLEY, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Avery Morrow ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and disability insurance benefits ("DIB"). This matter is before the court on Plaintiff's brief [DE-13] ("Pl.'s Brief") seeking judgment in her favor and Defendant's responsive brief [DE-14] in opposition ("Def.'s Brief"). The time for filing responsive briefs has expired pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, it is recommended that Plaintiff's brief [DE-13] be allowed, Defendant's brief [DE-14] be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and DIB on July 29, 2015, alleging disability beginning April 25, 2014. Transcript of Proceedings ("Tr.") 15, 58, 68.

Her claim was denied initially. Tr. 58-67, 84-87. Plaintiff filed a request for reconsideration (Tr. 88), and was denied upon reconsideration on May 10, 2016 (Tr. 69-83, 89-92). A hearing before ALJ Catherine Harper ("ALJ Harper") was held on July 11, 2019, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. Tr. 31-57, 1005-30. On August 8, 2019, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 12-30, 933-51.

On October 1, 2019, Plaintiff requested a review of the ALJ's decision by the Appeals Council. Tr.151-53. On June 10, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-6, 952-57. Plaintiff then filed a complaint in this court seeking review of the then-final administrative decision. Tr. 958-64; *see also Morrow v. Kijakazi*, No. 5:20-CV-00404-M (E.D.N.C. filed July 27, 2020). On February 4, 2022, United States Magistrate Judge Robert B. Jones, Jr. issued a memorandum and recommendations, recommending the case be remanded the Commissioner for further proceedings. Tr. 965-96, *Morrow v. Kijakazi*, No. 5:20-CV-404-M, 2022 WL 562794, at *1 (E.D.N.C. Feb. 4, 2022), *report and recommendation adopted*, No. 5:20-CV-00404-M, 2022 WL 551237 (E.D.N.C. Feb. 23, 2022). On February 23, 2022, Chief United States District Judge Richard E. Myers, II adopted the recommendation of Magistrate Judge Jones, and ordered that the case be remanded to the Commissioner for further proceedings. Tr. 997-99; *Morrow v. Kijakazi*, No. 5:20-CV-00404-M, 2022 WL 551237, at *1 (E.D.N.C. Feb. 23, 2022). On June 27, 2022, the Appeals Council issued an order vacating the final decision of the ALJ and remanding the case to an ALJ for further administrative proceedings consistent with the order of the court, including specifically a directive to "take any further action needed to complete the administrative record and issue a new decision." Tr. 1001-04.

On January 23, 2023, a second administrative hearing was held before ALJ Harper, at

which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. Tr. 904-32. On February 10, 2023, the ALJ issued the decision at issue in this case, denying Plaintiff's request for benefits. Tr. 877-903. Plaintiff then filed the instant complaint in this court seeking review of the final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d

3

438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §

404.1520a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 897. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since April 25, 2014, the alleged onset date, through her date last insured of March 31, 2019. Tr. 882.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, cervical spine with cervical spondylosis; post-traumatic stress disorder (PTSD); depression; attention-deficit/hyperactivity disorder (ADHD). Tr. 883. The ALJ also found Plaintiff had the following non-severe impairments: obesity; varicose veins; sarcoidosis; MRSA; hypertension; anemia; remote history of non-Hodgkin's lymphoma in 2008; history of atrial fibrillation ablation; headaches; dermatitis; "mild" disc protrusions in lumbar spine; history of right femur ORIF; right elbow epicondylitis; "mild" left ulnar mononeuropathy to the elbow; and 3 mm chronic avulsion fracture at dorsal lateral aspect of the trapezium with adjacent partial thickness capsular tearing and secondary osteoarthritis at the first carpal metacarpal joint. Tr. 883.

However, at step three, the ALJ concluded these impairments both physical and mental, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 886. Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental impairments have resulted in moderate limitation in understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. Tr. 886-887.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform light work[1] with the following limitations:

> The claimant can frequently climb ladders, ropes, and scaffolds. She can frequently crawl. She can frequently reach overhead with the bilateral upper extremities. The claimant can understand, remember, and carry out simple instructions. She can sustain concentration, attention, and pace sufficient to carry out those simple instructions over the course of an 8-hour workday and at 2-hour intervals. The claimant is limited to low stress jobs, defined here as having only occasional changes in the work setting.

Tr. 888.

In making this assessment, the ALJ found Plaintiff's statements about her limitations not entirely consistent with the medical evidence and other evidence in the record. Tr. 889.

At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of her past relevant work as a masseuse as actually or generally performed. Tr. 895. Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy. Tr. 896.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id.* A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

## V. DISCUSSION

Plaintiff contends that the ALJ erred (i) in failing to consider the treating source opinion of Alison Mikel, M.D. ("Dr. Mikel") in evaluating Plaintiff's impairments under the Listings and (ii) in failing to properly evaluate the evidence in determining the persuasiveness of the opinion in the RFC determination. Pl.'s Brief. [DE-13] at 10. For the reasons provided below, the undersigned agrees.

Because Plaintiff filed her claims on July 29, 2015 (Tr. 58), the applicable regulation regarding the evaluation of medical source opinions is 20 C.F.R. § 404.1527, entitled "Evaluating opinion evidence for claims filed before March 27, 2017." The parties do not dispute that 20 C.F.R. § 404.1527 is the applicable regulation. *See* Pl.'s Brief. [DE-13] at 12 n.1; Def.'s Brief. [DE-14] at 7.

Section 404.1527 instructs that "[r]egardless of its source, [the ALJ] will evaluate every *medical opinion* [it] receive[s]." 20 C.F.R. § 404.1527(c) (emphasis added). Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." *Id.* § 404.1527(a)(1). An "'[a]cceptable medical source' is defined by regulation and includes only licensed physicians, licensed or certified psychologists for purposes of establishing intellectual disability and intellectual functioning levels, licensed optometrists for purposes of establishing visual disorders, licensed podiatrists, and qualified speech-language pathologists." *Braswell v. Saul*, No. 5:19-CV-336-KS, 2020 WL 4937509, at *3 (E.D.N.C. Aug. 24, 2020) (citing 20 C.F.R. § 404.1513(a) (effective until Mar. 27, 2017)). In evaluating medical opinions, the ALJ must

7

"always consider the medical opinions in [a] case record together with the rest of the relevant evidence [it] receive[s]." *Id.* § 404.1527(b) (citing 20 C.F.R. § 404.1520b).

In general, the ALJ should assign more weight to the medical opinion of a source who has examined the claimant than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1). Additionally, more weight is generally given to the opinion of a treating source,[2] rather than non-treating sources, such as consultative examiners. *Id.* § 404.1527(c)(2); *see also Warren v. Berryhill*, No. 4:16-CV-77-FL, 2017 WL 3326978, at *3 (E.D.N.C. July 10, 2017); *Moore v. Colvin*, No. 4:12-CV-189-FL, 2013 WL 5434052, at *4 (E.D.N.C. Sept. 27, 2013). Controlling weight will be given "to a treating physician's opinion on the nature and severity of [a] claimant's impairment if that opinion is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with the other substantial evidence' in the record." *Arakas v. Comm'r, Soc. Sec. Admin.,* 983 F.3d 83, 106 (4th Cir. 2020) (quoting 20 C.F.R. § 404.1527(c)(2)).

"If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the

---

[2] "Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (*e.g.*, twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such case, we will consider the acceptable medical source to be a nontreating source." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

physician's opinion, (4) the consistency of the opinion with the record, (5) whether the physician is a specialist, and (6) any other relevant factors." *McCormick v. Colvin*, No. 7:13-CV-00234-RJ, 2015 WL 1471269, at *7 (E.D.N.C. Mar. 31, 2015) (citing *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citation omitted); *Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c))); 404.1527(c). The ALJ is not required, however, to discuss all of these factors. *McCormick*, 2015 WL 1471269, at *7 (citing *Ware*, 2012 WL 6645000, at *2 (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Munson v. Astrue*, No. 5:08-CV-l10-D(3), 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008) (unpublished)).

Yet, an ALJ "must give 'good reasons' for the weight assigned to a treating physician's opinion." *White v. Colvin*, No. 5:13-CV-853-FL, 2015 WL 545447, at *7 (E.D.N.C. Feb. 10, 2015) (quoting *Ware*, 2012 WL 6645000, at *3). And, while an ALJ is not obligated to accept any medical opinion, the ALJ is, however, required to explain the weight given to each opinion. *McCormick*, 2015 WL 1471269, at *7 (citing *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished)); *see also Lamb v. Berryhill*, No. 7:16-CV-397-BO, 2017 WL 5509998, at *3 (E.D.N.C. Nov. 17, 2017) (citing *Mastro*, 270 F.3d at 178). "Without . . . specific explanation of the ALJ's reasons for the differing weights he assigned various medical opinions, neither [the court of appeals] nor the district court can undertake meaningful substantial-evidence review." *David v. Berryhill*, No. 7:17-CV-157-FL, 2018 WL 4664129, at *3 (E.D.N.C. Sept. 28, 2018) (alterations in original) (quoting *Monroe v. Colvin*, 826 F.3d 176, 191 (4th Cir. 2016)).

Here, Dr. Mikel began treating Plaintiff in March 2018. Tr. 893. Dr. Mikel met with

Plaintiff once a month for 30-minute counseling sessions, except that in January 2019 she had a 45-minute session with Plaintiff after a 6-month absence from treatment. Tr. 893. Plaintiff had 6 office visits with Dr. Mikel before the date last insured, specifically in March 2018, May 2018, June 2018, January 2019, February 2019, and March 2019. Tr. 893. The ALJ refers to Dr. Mikel as "[t]he claimant's psychiatric provider," (Tr. 895), which suggests that the ALJ acknowledges Dr. Mikel as a treating source.

Dr. Mikel diagnosed Plaintiff with PTSD and depression, and started Plaintiff on medication. Tr. 893. While Dr. Mikel's mental status examinations consistently showed that Plaintiff "had intact recent memory, was alert and oriented, had good eye contact, goal-directed thought processes, had future-oriented thought content with no suicidal ideation, had average fund of knowledge, [and]was cooperative," they also showed that Plaintiff was "disheveled at times" and "had a sad/depressed mood and affect" at most visits, and "an anxious rather than sad mood at her office visit in March 2019." Tr. 893. The ALJ notes that "[i]n February 2019, less than a year after she began treatment, [Plaintiff] reported she was doing better after her medication adjustments, had return of clarity of thought, had good sleep, and had improving energy." Tr. 893. However, at her visit in March 2019, the last visit before the date last insured, Plaintiff "reported feeling anxious[,] that her antidepressant medication was not working[ and that] her mood was low because of anxiety." Tr. 893. Plaintiff continued to meet with Dr. Mikel after the date last insured from May 2019 to October 2020 and then sporadically thereafter, specifically in in August 2021, November 2021, and November 2022.

Dr. Mikel completed a mental impairment questionnaire in January 2023, where she opined that Plaintiff had "marked" limitations in (1) understanding, remembering or applying information;

10

(2) interacting with others; and (3) concentrating, persisting or maintaining pace, with moderate limitation in adapting or managing oneself.  Tr. 1490-95.

The ALJ gave the opinions only limited weight for three reasons (1) "Dr. Mikel completed the questionnaire nearly 3 years after the claimant's date last insured expired," (2) the opinions "rely heavily, if not entirely, on [Plaintiff's] subjective report of symptoms and limitations," and (3) "The objective findings in Dr. [Mikel's] treatment records do not support "marked" limitations in any area of the paragraph B limitations."  Tr. 895.

As noted above, " a treating physician's opinion on the nature and severity of [a] claimant's impairment [will be given controlling weight unless it is (1) [not] 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' [or] (2) '. . . inconsistent with the other substantial evidence' in the record."  *Arakas*, 983 F.3d at 106.

As an initial matter, the undersigned does not find that substantial evidence supports the ALJ's discrediting of Dr. Mikel's opinion because it was completed "nearly 3 years after [Plaintiff's] date last insured expired." Tr. 895.  Dr. Mikel began treating Plaintiff in March 2018 and completed six sessions with Plaintiff before the date last insured.  Tr. 893.  Moreover, the questionnaire specifically asks "[w]hat is the earliest date at which the above noted severity of limitations applied," to which Dr. Mikel responded "[March 27,] 2018, but reported since 2014" all of which is well before the date last insured.

The ALJ's last two points, *i.e.*, that Dr. Mikel's opinions "rely heavily, if not entirely, on [Plaintiff's] subjective report of symptoms and limitations" and that "the objective findings in Dr. [Mikel's] treatment records do not support "marked" limitations in any area of the paragraph B limitations" (Tr. 895) appear to be two sides of the same coin.

Claims that Dr. Mikel's opinions have heavy or exclusive reliance on subjective reports appears to be contradicted by the fact that Dr. Mikel's notes from Plaintiff's sessions consistently include objective mental status evaluations. *See, e.g.*, Tr. 751, 756, 761, 766, 771, 779. Additionally, Dr. Mikel's medical records from March 27, 2018, note that "[o]ver three hours of physician time was spent interviewing and testing the patient, *interpreting and integrating data, neuropsychiatric evaluations*, previous records, medical reports, collateral information, and other pertinent psychiatric history. This evaluation meets a high level of complexity." Tr. 780 (emphasis added); *see Lamb v. Berryhill*, No. 2:16-CV-56-FL, 2017 WL 3332919, at *15 (E.D.N.C. July 6, 2017), *report and recommendation adopted*, No. 2: 16-CV-56-FL, 2017 WL 3325075 (E.D.N.C. Aug. 3, 2017) (remanding in part due to the fact that "the ALJ seemingly ignored [the mental health professional's reliance on diagnostic testing], in her evaluation of Dr. Durham's opinions by stating that he relied "heavily" on plaintiff's subjective report of symptoms). Dr. Mikel specifically notes that while Plaintiff's "CnT and TGMA reflects an overall average general mental ability . . . [her] CPT scores, a measure of sustained attention, was very well below average (first percentile)." Tr. 781. Similarly, Plaintiff's overall processing speed was in the 19th percentile and Dr. Mikel noted that Plaintiff "show[ed] weaknesses in [sustained] attention and concentration which will need to be evaluated. *Id.* The ALJ appears to address Plaintiff's "very well below average (first percentile)" sustained attention and low overall processing speed by her reference to "some weaknesses in sustained attention and concentration on testing which would need to be evaluated." Tr. 893.

The ALJ specifically references a lack of support from objective medical evidence, but does not point to other external medical evidence which is inconsistent with Dr. Mikel's findings.

12

The ALJ specifically assigned "less weight" to the opinion of State agency psychological consultant who assessed Plaintiff to have "no severe mental impairment." Tr. 894. As discussed below, while inconsistent findings can discredit subjective limitations allegedly caused by certain depressive disorders, a lack of objective medical evidence does not necessarily do so.

In February 2023, the Fourth Circuit held in *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341 (4th Cir. 2023),[3] that similar to the evaluation of fibromyalgia, "ALJs could not rely upon the absence of objective medical evidence to discredit 'a claimant's subjective complaints regarding symptoms of [major depressive disorder ("MDD")].'" *Shelley C.*, 61 F.4th at 361 (quoting *Arakas*, 983 F.3d at 97). The Fourth Circuit went on to note that "because of the unique and subjective nature of MDD, subjective statements from claimants 'should be treated as evidence *substantiating* the claimant's impairment.'" *Id.* at 361-62.

Additionally, with respect to the ALJ's references to Plaintiff's "mild improvement at times" (Tr. 894) and references to treatment records from November 2015 reporting that Plaintiff was "running around with the kids all day" (Tr. 890), the court in *Shelley C.* emphasized that intermittent findings of improvement did not preclude a finding of MDD due to the nature of the illness. *Id.* at 357 ("The fact is 'people with chronic diseases can experience good and bad days' even 'under continuous treatment for it with heavy drugs.'") (quoting *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267 (11th Cir. 2019)). Plaintiff expressly noted during her testimony that she often has to cancel her plans due to her symptoms. Tr. 918. While the ALJ acknowledges Plaintiff's testimony that she has 10-15 "good days" a month, she does not explain how the RFC

---

[3] It is important to note that the ALJ issued her decision on February 10, 2023, prior to the Fourth Circuit's decision in *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 2023 WL 2147306 (4th Cir. 2023) on February 22, 2023. The ALJ could therefore not have applied the findings in *Shelley C.* when deciding this case in the first instance.

13

accounts for Plaintiff's "bad days," or alternatively why it does not need to be addressed in the RFC.

The ALJ's reasoning for denying controlling weight to Dr. Mikel's opinion is undermined in too many ways, including the subsequent publication of *Shelly C.* by the Fourth Circuit, for the undersigned to determine that her findings in this regard are supported by substantial evidence. Additionally, the ALJ's discussion of factors under 404.1527(c) is insufficient for the undersigned to determine that her finding in this regard are supported by substantial evidence. While the ALJ is not required to discuss all of the 404.1527(c) factors, *McCormick*, 2015 WL 1471269, at *7, she still must provide "'good reasons' for the weight assigned to [Dr. Mikel's] opinion," which the undersigned finds she has not. *White v. Colvin*, No. 5:13-CV-853-FL, 2015 WL 545447, at *7 (E.D.N.C. Feb. 10, 2015).

Ultimately, the determination of what weight to afford a medical opinion lies within the sound discretion of an ALJ. However, as discussed above, the ALJ must provide a specific explanation for their evaluation of the opinion in accordance with the applicable regulations, and give good reasons for the weight assigned when dealing with a treating physician. The ALJ's failure to provide "good reasons," as well as a lack of explanation and analysis here, frustrates meaningful review by the court. While the Commissioner may be able to provide other or different explanations for discrediting Dr. Mikel's opinions, such explanations must be provided by the ALJ in the first instance. Accordingly, the undersigned RECOMMENDS that the court REMAND this matter to the Commissioner for further proceedings. On remand, the Commissioner should evaluate Dr. Mikel's opinions consistent with the applicable regulations and in consideration of the Fourth Circuit's ruling in *Shelley C.* The Commissioner should provide sufficient explanations

regarding the weight assigned to all medical opinions, so that meaningful judicial review would be permitted, if necessary.

## VI. CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's Brief [DE-13] be ALLOWED, Defendant's Brief [DE-14] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 28, 2024**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by **the earlier of 14 days from the filing of the objections or September 5, 2024**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of**

**Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, this 15th day of August, 2024.

_____
Brian S. Meyers
United States Magistrate Judge